# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**TYRONZA WOODARD,**

    **Plaintiff,**

vs.                                                             **CASE NO. 1:06CV23-MP/AK**

**EVAN SULLIVAN, et al,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that the Defendants, officers with the Levy County Drug Task Force, used excessive force against him during his arrest on June 30, 2004. (Doc. 1). Defendants have filed a special report, which has been construed as a motion for summary judgment. (Doc. 12). Plaintiff has responded. (Doc. 32).

### I.  Allegations of the complaint

Plaintiff claims that around 10:00 p.m. on the night of June 30, 2004, he was at his cousin's house, Crystal Wilcox, when Defendants Evan Sullivan, Willie Barnes, and Joe Barrera came to the residence to arrest him for outstanding warrants. Assisted by

the Williston Police, who drove up in the driveway, Plaintiff was alerted to run out the rear of the dwelling by his cousin Jeremy. He ran in a northerly direction from the residence into a wooded area to attempt to reach his aunt's yard. He wore only sweat pants and boots. He was told to stop, that a K-9 unit was on him, but he kept running to get away from the dog and jumped onto his grandfather's truck yelling for his family inside to come help. He also told the officers if they would leash the dog he would climb down off the truck indicating his surrender. Instead, the officers allegedly shot him in the back with a taser causing him to collapse when Defendant Barrera pulled him to the ground, put his knee in Plaintiff's neck and handcuffed him. Allegedly Barnes and Barrera picked him up, took him to the rear of his aunt's house and asked him where the drugs were, slamming him to the ground injuring his neck and left leg. His aunt witnessed this. His left leg was treated at the hospital later that night.

## II.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material

**No. 1:06cv23-mp/ak**

demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**No. 1:06cv23-mp/ak**

### III.     Defendants Rule 56(e) evidence

    a)     <u>Officer Response to Resistance Form (Exhibit 2)</u>

Dated June 30, 2004, and completed by Defendant Sullivan, it shows that a taser was used on Plaintiff because he refused to stop running after being told to stop causing a "small needle hole" in his back. He was treated at Nature Coast Emergency Room.

    b)     <u>Written narrative (Exhibit 3)</u>

The unidentified author of this statement corroborates Plaintiff's version of the arrest up until the point that the dog apprehended Plaintiff, which the author states happened at the corner of a residence and Plaintiff fell to the ground. When Plaintiff picked himself back up to run from the dog he ran directly into a wooden outdoor swing, he again fell, after which he got up and ran to a truck and jumped onto the hood. At this point, the narrator describes Defendant Barnes telling Plaintiff to get down twice before he deployed the taser, Plaintiff went to the ground and Defendant Barrera apprehended him. It was unclear whether Plaintiff injured his leg from the dog or the swing, but he was checked by EMS who advised that the injury was minor, but a tetanus shot was needed. Plaintiff was taken to Nature Coast ER for the shot and a bandage to his leg. Plaintiff was then taken to the Levy County Jail and booked on charges outstanding from previous warrants, not the charges arising from the current arrest. Drugs were found along Plaintiff's escape route and his fingerprints were lifted from a box containing drug residue that matched Plaintiff's.

**No. 1:06cv23-mp/ak**

c) <u>Information</u>

Plaintiff was charged with drug trafficking, possession of paraphernalia, and resisting officer without violence based on the events described above. He was tried and found guilty on the trafficking and resisting arrest charges for which he was sentenced to 22 years on the trafficking charge and one year for resisting arrest.

d) <u>Inmate Population Information</u>

Plaintiff is incarcerated at Liberty CI with a release date of 2/18/2026.

e) <u>Affidavit of Evan Sullivan</u>

Defendant Sullivan is a deputy with the Levy County Sheriffs Department, a position he has held for 21 years. He was a K-9 handler in June 2004. He recalls that Plaintiff was a known drug dealer with a history of violence towards law enforcement and evasion. After a number of controlled drug buys involving Plaintiff, the drug task force went to arrest Plaintiff on June 30, 2004, with the assistance of the Marion County Sheriffs Department and the Williston Police Department. Sullivan, Barnes and Barrera were set up on the north side of the residence behind a large oak tree. Williston Police Officers pulled up in the driveway with their lights on and Plaintiff left walking along the eastern wall of the house and then began running towards the area where Defendants Sullivan, Barnes, and Barrera were located. They revealed themselves at this time and Plaintiff began running. He did not stop when warned that the officers would release their dog. The dog was released and the men followed him as he chased Plaintiff to the corner of a neighbor's trailer where the dog apprehended Plaintiff and Plaintiff hit the ground. The dog did not hold Plaintiff with his teeth and Plaintiff got up and began

**No. 1:06cv23-mp/ak**

running again at full speed into a hanging outdoor swing.  Plaintiff fell again, but picked himself up running to a pick up truck where he jumped on the hood and then onto the roof to evade the dog.  Barnes told Plaintiff to get down twice before firing the taser weapon.  The dog was collared by this time by Sullivan.  Plaintiff went to the ground where Barnes handcuffed him without further incident.  The dog was leashed and made no further contact with Plaintiff.  Plaintiff was later taken to the emergency room for a tetanus shot and bandaging for a minor injury to his left leg which may have been made by the dog or when he ran into the swing.

  f)  <u>Affidavit of Joseph Barrera</u>

Defendant Barrera saw what appeared to be two plastic bags drop from Plaintiff when he was first apprehended by the dog and Barrera went back and recovered the bags which contained 51 grams of powder and crack cocaine.  He also found in the area a box with white residue in it which turned out to be cocaine.  The rest of Barrera's recollection corroborates Sullivan's version set forth in his affidavit.

  g)  <u>K-9 Bite Report</u>

Shows that Robiek, a K-9 deputy, bit Plaintiff on the left leg while apprehending him in the woods behind his residence.  The narrative statement said that Robiek leaped on Plaintiff knocking him to the ground, but did not bite him.  The dog then chased Plaintiff onto a truck where he circled him barking until Sullivan collared him.  The leg was treated, but it was believed to have been caused by Plaintiff running into the swing and not by the dog.

**No. 1:06cv23-mp/ak**

      h)    <u>Affidavit of Willie Barnes</u>

Defendant Barnes has been a Deputy with the Levy County Sheriffs Department for six years. He prepared the Resistance Form reports following the incident with Plaintiff. He was with Defendants Sullivan and Barrera for the arrest of Plaintiff and witnessed Plaintiff run from them and the K-9 after being warned twice to stop. The K-9 was released and brought Plaintiff down at the corner of a residence, released Plaintiff, who got up and ran directly into a wooden outdoor swing, fell gain, and then got up and continued to run. When Plaintiff got to the next yard he jumped up on the roof of a vehicle and refused to come down after two warnings. Defendant Barnes then shot him in the back with a Taser. He shot Plaintiff because he ran from them, ran after the K-9 apprehended him, would not come down from the truck and appeared to be looking for another escape route, and he was inciting others to help him escape. Barnes also knew Plaintiff had a violent history, including acts of resistance, in particular he had broken the nose of a female deputy. The officers were also uncertain whether he was armed or not. After being hit with the Taser, Plaintiff went down and was handcuffed and taken to a patrol vehicle. Defendant Barnes denies striking, beating or kicking Plaintiff and recalls that after Plaintiff was on the ground he began shouting to the gathering crowd in an attempt to incite them by saying that the officers were doing something to him, but they were not.

**IV.**    **Plaintiff's response**

      a)    <u>Inmate Photo Sheet and Booking Information</u>

**No. 1:06cv23-mp/ak**

Page 8 of 12

Plaintiff has submitted his booking photograph to show that he was bald at his arrest and the officer's statements that he was sitting outside getting his hair done were false.

      b)    <u>Notarized Statement of Voncia Brown</u>

Ms. Brown attests that on the night of June 30, 2004, she heard helicopters around her house and went to the back door to see what was going on. The police told her to go back inside, but she heard her nephew Tyrone yelling so she went outside through the front door and saw him running through her swing with the officers and K-9 behind him. She saw him jump up on a truck and the K-9 trying to get on the truck. Her nephew said he would get down if they would get the dog, "but then they pulled him down from the truck and arrested him. When they were escorting him to the vehicle, I was asking them what was going on. Then I saw my nephew fall and I yelled to my sister, 'Zsa, come see how they are abusing your son.' I was telling her to hurry up, and that I wish we had a camera so we could take pictures. The officers continued through the path, taking him to the police car. There were a lot of officers around my house. I asked them what they were looking for. They said they were looking for drugs, my nephew suppose to have drop why [sic] he was running."

      c)    <u>Statement of Zsa Zsa Brown-Ross</u>

She was at home on the night of June 30, 2006, [the year must be a typographical error], with her grandchldren and husband when she heard helicopters outside. When she got outside she saw her son, Tyronza Woodard, on the ground. She asked what was going on and was told to step back while the officers handcuffed

him. She heard Woodard ask the officers to loosen the handcuffs. She heard her sister yelling at her to see how they were treating her son. Defendant Barnes allegedly told her that her son would be gone for a long time and that she could not have the keys to the car because it was evidence.

**V.     Analysis**

A claim of excessive force in the course of an arrest, investigatory stop, or any other "seizure" of a free citizen is analyzed under the Fourth Amendment and its "reasonableness" standard.  Graham v. Connor,  490 U.S. 386, 109 S.Ct. 1865, 1871 and n. 10, 104 L.Ed.2d 443 (1989); Hamm v. Powell, 874 F.2d 766 (11th Cir. 1989), as modified on rehearing, 893 F.2d 293 (1989).  The issue of "reasonableness" requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate theat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 109 S.Ct. at 1872.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force, the same standard of reasonableness applies:  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028], at 1033 [(2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)], violates the Fourth Amendment  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

109 S.Ct. at 1872.

**No. 1:06cv23-mp/ak**

It is also not the law in the Eleventh Circuit that the use of a Taser weapon is per se excessive.  See Draper v. Reynolds, 369 F.3d 1270 (11th Cir.2004).  Again, the court uses a "totality of the circumstances" analysis to assess the reasonableness of the force used, recognizing that officers are often in a difficult and tense situation when attempting to arrest someone who resists their actions leading to an inevitable physical confrontation.

From the Defendants' evidence it is clear that they had probable cause to believe Plaintiff had been dealing drugs, that he had a criminal history for violence in resisting arrest, including breaking the nose of an officer, and it was dark, Plaintiff was running from them through trees and neighbors back yards, refusing to stop, and the officers did not know if he had a weapon or not.  Under the circumstances, the use of a K-9 to apprehend Plaintiff was reasonable, and when he continued to flee up on the roof of a truck, the use of a Taser to make him get down was also reasonable.  Plaintiff does not allege any injury from the Taser and it is not clear whether he was injured from the dog or when he ran into the hanging swing, but regardless the medical evidence shows that the injury was minor.

The statements of Plaintiff's aunt and mother do not support the facts set forth in the complaint, and rather corroborate the facts set forth in the affidavits of the Defendants, i.e. that Plaintiff was running from the police officers and dog, ran into the swing in the aunt's yard, and jumped up on a vehicle in a continuing effort to evade the officers.  There is no mention by either witness about the dog attacking Plaintiff, about the officers using a Taser weapon or hitting him or slamming him to

**No. 1:06cv23-mp/ak**

the ground or any of the details provided by Plaintiff in his complaint. Plaintiff specifically states in his complaint that the aunt witnessed him being slammed to the ground by Defendants Barnes and Barrera injuring his neck and leg, yet she does not mention this incident in her statement. She states only generally that she yelled at her sister to witness them abusing Plaintiff, but provides no details of what surely would have been foremost to her, that she saw them slam him into the ground. Plaintiff's mother recalls only that Plaintiff complained about his handcuffs being too tight, nothing about being attacked by the dog, shot by the Taser, or having hurt his neck and leg from being slammed into the ground. Again, these details are important in establishing that the force used in his arrest was excessive, i.e. unreasonable. The evidence provided by Plaintiff supports the officer's version of the events in question, that Plaintiff was resisting arrest and attempting to flee, and the officers used a Taser without injury to the Plaintiff to get him off the vehicle and in a posture to be handcuffed and arrested. Under the facts presented, these actions were entirely reasonable. Consequently, there is no merit to this claim.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 12) be **GRANTED**, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**No. 1:06cv23-mp/ak**

**IN CHAMBERS** at Gainesville, Florida, this **12th** Day of September, 2007.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:06cv23-mp/ak**